UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JONATHAN WILLIAM NELSON,

        Plaintiff,

v.                                          Case No. 3:22-cv-1306-MMH-JBT

SGT. STARLING, et al.,

        Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Jonathan Nelson, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on November 28, 2022, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[1] with exhibits (Doc. 1-1). In the Complaint, Nelson names Sergeant Brian Starling and Officer Carl Bedford as Defendants. Complaint at 2. This matter is before the Court on Defendants' Motion to Dismiss with Incorporated Memorandum of Law (Motion; Doc. 17). Nelson filed a response (Response; Doc. 26) in opposition to the Motion. Thus, the Motion is ripe for review.

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

## II. Nelson's Allegations

In the Complaint, Nelson alleges Defendants violated his Eighth Amendment rights when they refused his request to declare a psychological emergency on September 3, 2022, at Florida State Prison (FSP). See Complaint at 3, 5. Nelson also alleges Defendants denied him "immediate medical attention" and left him covered with blood when he cut himself "to relieve stress." Id. at 5. As relief, Nelson seeks injunctive relief and monetary damages. Id.

## III. Summary of Arguments

In the Motion, Defendants argue the Court should dismiss the Complaint due to Nelson's failure to exhaust administrative remedies. See Motion at 1-7. Defendants assert that the grievances Nelson submitted concerning the September 3, 2022 incident fail to satisfy exhaustion requirements because they were all returned without action. Id. at 5-7. Nelson responds that the Court should not dismiss his claims because he "utilized the grievance process all the way to Central Office in Tallahassee, upon realizing []his . . . grievance [was] of a sensitive nature." See Response at 3.

## IV. Analysis

### A. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed

2

before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012)[2] (noting that exhaustion is a "threshold matter" that must be addressed first) (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. <u>See</u> 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). A prisoner such as Nelson, however, is not required to plead exhaustion. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u> Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[3] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Nelson] has failed to exhaust his available administrative remedies." <u>Turner</u>, 541 F.3d at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. <u>See</u> <u>Turner</u>, 541 F.3d at 1081. In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. <u>Id.</u>

---

[3] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020). Here, Nelson submitted grievance records with the Complaint. See Doc. 1-1. The parties neither dispute the accuracy of these grievance records, nor request an evidentiary hearing. Bryant, 530 F.3d at 1377 n.16. Thus, the Court considers the grievance records solely for purposes of addressing the parties' competing contentions regarding exhaustion. In evaluating whether Nelson has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. <u>See</u> Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. <u>See</u> Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal grievance stage and start with a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are

types of "direct grievances" that may be filed with the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance

7

that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1).

### C. Nelson's Grievance Records

The grievance records Nelson submitted with his Complaint consist of: (1) a direct grievance that Nelson submitted to the FDOC Secretary on September 5, 2022, with response; and (2) an informal grievance Nelson submitted on September 29, 2022, with response. <u>See</u> Doc. 1-1. As described below, both grievances were returned without action. <u>Id.</u> at 2, 3.

Following the September 3, 2022 incident, Nelson initially submitted a grievance directly to the FDOC Secretary on September 5, 2022. <u>See</u> Doc. 1-1 at 1. In the direct grievance, Nelson specified that he bypassed the grievance process at the institutional level because he believed he would "be adversely affected by the submission of a grievance at [the] institution and subject to retaliation and physical harm by staff." <u>Id.</u> (cleaned up). As to the factual basis for the direct grievance, Nelson alleged he tried to declare a psychological emergency and "bit open [his] arm spraying blood everywhere" on September 3, 2022. <u>Id.</u> According to Nelson, Defendant Starling witnessed the incident, but refused to get Nelson psychological or medical assistance, causing Nelson's arm to be infected. <u>Id.</u> Nelson alleged Defendant Starling threatened to return

8

another day to "[d]eal" with him and also "claimed to have [written] [Nelson] a false D.R. [Disciplinary Report]." Id. According to Nelson, Defendant Starling also instructed Defendant Bedford and other FSP staff "not to help [Nelson]." Id. After Defendant Starling left to go home, FSP night staff arranged for Nelson to receive medical treatment. Id. Nelson stated he was "in fear for [his] [l]ife from [Defendant] Starling making good on [h]is threats of D.R.'s and [h]urting [him]." Id.

On September 15, 2022, the FDOC Secretary returned the grievance without action, stating in pertinent part:

> Note: This grievance is not accepted as a grievance of reprisal.
>
> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your grievance at the appropriate level at the institution. You have not done so, or you have not provided this office with a copy of that grievance, nor have you provided a valid or acceptable reason for not following the rules.
>
> Furthermore, if you fear staff, you need to file an informal to the Colonel. The Colonel should have the opportunity to address these issues regarding staff at the institution.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.

> Based on the foregoing information, your grievance is
> returned without action.

Id. at 2. After his direct grievance was returned without action, Nelson

submitted an informal grievance at the institutional level on September 29,

2022. He stated in the informal grievance:

> [O]n 9-3-22[,] Officer Bedford received [a] request and
> call from Chaplain [a]bout my [b]rother calling to tell
> me my 2 [a]unt's died[.] When [I] received this [call] . .
> . [I] [b]egan [h]aving [a] mental [b]reakdown. Sgt.
> Starling [a]nd Officer Bedford came . . . [to] my cell . .
> . [I] declared [a] psych emergency [and] then [b]it my
> [a]rm open spraying [b]lood everywhere[,] to which
> [b]oth Sgt. Starling [a]nd Officer Bedford witnessed
> [a]nd refused to [h]elp me [a]s [a] cruel punishment to
> inflict further pain on me neglecting [their] duty and
> violating procedures [a]nd rules set [a]t [FSP] . . . . Sgt.
> Starling [a]nd Officer Bedford pretend[ed] nothing
> was wrong . . . . Sgt. Starling threatened to come see
> me personally . . . . Since then, Sgt. Starling has [a]s
> [a] retaliation made sure [I] never [a]m [a]llowed to go
> to recreation [a]nd calls me snitch when he [p]asses my
> door.

Id. at 3. On October 3, 2022, the informal grievance was returned:

> Your grievance is being returned without processing
> in accordance with DC Rule Ch. 33-103.014(1)(b)
> which states the grievance is so broad, general or
> vague in nature that it cannot be clearly investigated,
> evaluated and responded to. You need to provide us
> with specific information (names, dates, times) so it
> can be adequately investigated. In order to receive
> administrative review, you must correct the defects
> and resubmit within the allow[ed] time frame.

Id.

10

### D. __Turner__ Step One

Under the first step of the __Turner__ analysis, the Court must review the allegations in the Motion and Response and accept as true Nelson's allegations. See __Whatley__, 802 F.3d at 1209. If Nelson's allegations show a failure to exhaust, then dismissal would be appropriate. Id. But, Nelson alleges that he exhausted his administrative remedies by filing the direct grievance. __See__ Response at 3; see also Complaint at 3 (asserting that "the grievance process is completed"). Accepting Nelson's view of the facts as true, the Court cannot dismiss Nelson's claims at the first step of the __Turner__ analysis.

### E. __Turner__ Step Two

As dismissal would not be appropriate based on Nelson's allegations, the Court next turns to the second prong of the __Turner__ analysis. The parties agree that Nelson filed a direct grievance and an informal grievance regarding the September 3, 2022 incident. The only dispute is whether those grievances were properly returned without action for failure to comply with the grievance procedures. Upon review, the Court finds that Nelson failed to exhaust his administrate remedies.

Nelson alleges that he satisfied the exhaustion requirement by filing the direct grievance. __See__ Response at 2-4. Though Nelson labels it a grievance of a "sensitive nature" in his Response, id. at 2, the specific type of direct grievance Nelson submitted was a grievance of reprisal because his stated reason for

11

bypassing the institutional level grievance process was a fear of retaliation and physical harm by FSP staff. See Fla. Admin. Code Ann. R. 33-103.002(9) (defining a grievance of reprisal as "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure"). However, Nelson failed to provide any factual support for his belief that he would be subject to retaliatory action or physical harm if he were to pursue the grievance process at FSP. Nor did Nelson allege that the September 3, 2022 incident was retaliation for a prior grievance. And while Nelson alleged in the direct grievance that Defendant Starling threatened to "deal" with him and claimed to have issued a false disciplinary report, Nelson did not assert these alleged actions were taken in reprisal for grievances Nelson previously filed or to prevent Nelson from pursuing the grievance process in connection with the September 3, 2022 incident.

As such, Nelson's direct grievance did not qualify as a grievance of reprisal, and the FDOC Secretary properly returned it without action. See Gipson v. Renninger, 750 F. App'x 948, 950, 952-53 (11th Cir. 2018) (finding the Secretary properly returned a direct grievance without action where the inmate's statement that he "believe[d] that there will be some adverse actions (retaliations) if the officers are placed on notice at the institutional level" did not qualify as a grievance of reprisal because the inmate failed to provide

12

"factual support for his allegations of threats of retaliatory action by prison staff"); Dimanche, 783 F.3d at 1212-13 (finding the Secretary improperly returned a direct grievance without action where the plaintiff clearly identified the grievance as a grievance of reprisal, explained that he had been "gassed" for writing grievances, identified the acting warden and inspector as well as other individuals who had retaliated against him, and described being threatened with being "gassed to death" if he wrote more grievances). Because prison officials returned the direct grievance without action, it does not satisfy the exhaustion requirement. See Wallace v. Jones, No. 3:17-cv-214-TJC-JBT, 2018 WL 4145929, at *3 (M.D. Fla. Aug. 30, 2018) ("If a grievance is returned without action, the inmate has failed to 'properly' complete the grievance process") (citing Bryant, 530 F.3d at 1379).

Likewise, Nelson's informal grievance does not satisfy the exhaustion requirement because it, too, was returned without action for failure to comply with procedural requirements. See Doc. 1-1 at 3 (returning Nelson's informal grievance on grounds that it was "so broad, general or vague in nature that it cannot be clearly investigated, evaluated and responded to"); Johnson v. Meadows, 418 F.3d 1152, 1157-58 (11th Cir. 2005) ("[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred.") (quoting Pozo, 286 F.3d at 1023).

13

Notably, Nelson points to no other records showing that he submitted another informal grievance concerning the September 3, 2022 incident or that he completed the required three-step grievance process by filing a formal grievance and a grievance appeal after the return of his informal grievance. Thus, based on the undisputed record evidence, Nelson failed to properly exhaust his administrative remedies because he did not comply with the FDOC's sequential three-step grievance process. See Dimanche, 783 F.3d at 1211 (recognizing that the FDOC uses a three-step sequential process for inmate grievances that includes an informal grievance, formal grievance, and appeal); Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson, 418 F.3d at 1158)). For these reasons, the Motion is due to be granted and Nelson's claims are due to be dismissed for failure to exhaust.

Accordingly, it is now

**ORDERED AND ADJUDGED**:

1.    Defendants' Motion to Dismiss (Doc. 17) is **GRANTED.**

2.    Plaintiff Jonathan William Nelson's claims against Defendants Brian Starling and Carl Bedford are **DISMISSED without prejudice**.

3.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of January, 2024.


**MARCIA MORALES HOWARD**
United States District Judge


Jax-10  1/4
c:     Jonathan William Nelson, #U51846
       Counsel of record

15